IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA MILLER, | ) | Case No. 3:20-cv-31 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| TITHONUS TYRONE, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.      **Introduction**

Linda Miller ("Miller"), a licensed practical nurse ("LPN") at a nursing home operated by Defendant Tithonus Tyrone, L.P. ("TTLP"), brought this employment discrimination action against TTLP, her former employer.  Miller alleges that TTLP has committed acts of religious and age discrimination against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA").  TTLP moved to dismiss Miller's Complaint, arguing that Miller did not have a sincere religious belief as Title VII requires, that accommodating Miller's beliefs constituted an undue hardship as a matter of law, and that Miller had failed to identify any similarly situated employees who received favorable treatment.  TTLP's Motion to Dismiss (ECF No. 6) is fully briefed (ECF Nos. 6, 7, 8) and ripe for disposition.

For the following reasons, the Court **DENIES** TTLP's Motion to Dismiss and holds that Miller has stated plausible claims of religious discrimination in violation of Title VII and the PHRA based on theories of both failure to accommodate and disparate treatment.

## II.     Jurisdiction and Venue

This Court has original jurisdiction over Miller's ADEA and Title VII claims because they arise under federal law.  28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Miller's PHRA claims because they form part of the same case or controversy as her ADEA and Title VII claims.  28 U.S.C. § 1367.

Venue is proper in this district because the action was originally filed in the Court of Common Pleas of Blair County, which this district embraces, and TTLP timely removed the action.  28 U.S.C. §§ 1441, 1446.

## III.    Factual Background

This case arises from TTLP's termination of Miller's employment as an LPN at one of its nursing homes in 2017, allegedly in violation of Title VII, the ADEA, and the PHRA.[1]  The Court draws the following facts, which it accepts as true for purposes of deciding TTLP's Motion to Dismiss, from Miller's Complaint.  (*See* ECF No. 1-1.)

TTLP owns and operates Colonial Courtyard at Tyrone ("Colonial Courtyard"), a nursing home in Tyrone, Blair County, Pennsylvania.  (ECF No. 1-1 ¶ 3.)  TTLP hired Miller, an LPN, to work at Colonial Courtyard beginning in November 2005.  (*Id.* ¶¶ 5, 7, 8–9.)

Miller is a devout Christian whose beliefs require her to treat Sunday as a day of rest.  (*Id.* ¶¶ 19, 22.)  Miller attends church services every Sunday at Hillside Community Church.  (*Id.* ¶¶ 20–21.)  Throughout Miller's employment, TTLP was aware of Miller's belief that Sunday was a

---

[1] Although Tithonus Tyrone does not move to dismiss Miller's ADEA claims (*see* ECF No. 6 at 10), the Court recounts the facts supporting those claims in the interest of providing a complete picture of the dispute.

day of rest and for over eleven years, TTLP accommodated Miller's religious beliefs by not scheduling her to work on Sundays. (*Id.* ¶¶ 23–24.)

In the summer of 2017,[2] TTLP informed Miller that she would have to work Sundays; in response, Miller reiterated her objections to working Sundays, based on her religious beliefs. (*Id.* ¶¶ 25—26.) TTLP informed Miller that she had no choice and would have to work on Sundays when scheduled. (*Id.* ¶ 27.)

TTLP scheduled Miller to work on Sunday, November 12, 2017. (*Id.* ¶ 28.) Miller called off of work due to illness and obtained a doctor's notice stating that she had been unable to work November 12, 2017. (*Id.* ¶¶ 29–30.) On November 14, 2017, TTLP terminated Miller's employment, notwithstanding her religious objection to working on Sunday and her medical inability to work that day. (*Id.* ¶ 31.) When TTLP terminated her employment, she was told that TTLP was terminating her because it believed that she was no longer happy working at Colonial Courtyard. (*Id.* ¶ 32.)

Miller was 61 years of age when TTLP terminated her employment. (*Id.* ¶ 35.) Her replacement, Jacqueline Steel, was in her mid-thirties and not an LPN. (*Id.* ¶¶ 33–36.) On several occasions prior to her termination, Miller's supervisors at Colonial Courtyard had commented that Miller was approaching retirement age. (*Id.* ¶ 37.)

---

[2] It is unclear whether the alleged acts of discrimination occurred in 2017 or 2018, as Miller refers to being fired in November 2017, and having filed a complaint with the Pennsylvania Human Relations Commission in January 2018, but also states that she was still working for Tithonus Tyrone during the summer of 2018. (*See* ECF No. 1-1 ¶¶ 10, 15, 25.) The Court assumes that Miller was fired in November of 2017 and therefore assumes that all other relevant dates that conflict occurred in 2017. This further aligns with the fact that November 12, 2017, the Sunday on which Miller alleges Tithonus Tyrone scheduled her to work was, in fact, a Sunday, while November 12, 2018 was a Monday.

Eight months after her termination from TTLP, Miller began working part-time at Tipton Baptist Daycare at a substantially reduced pay rate.  (*Id.* ¶¶ 38–41.)

## IV.   Procedural Background

Miller originally filed this action in the Blair County Court of Common Pleas on January 30, 2020.  (ECF No. 1 at 2; 1-1 at 22.)  In her Complaint, Miller brings six counts: (1) religious discrimination in violation of Title VII—failure to accommodate (ECF No. 1-1 ¶¶ 39–49); (2) religious discrimination in violation of Title VII—disparate treatment (*Id.* ¶¶ 50–63); (3) religious discrimination in violation of the PHRA—failure to accommodate (*Id.* ¶¶ 64–77); (4) religious discrimination in violation of the PHRA—disparate treatment (*Id.* ¶¶ 78–91); (5) age discrimination in violation of the ADEA (*Id.* ¶¶ 92–105); and (6) age discrimination in violation of the PHRA (*Id.* ¶¶ 106–19).

TTLP moved to dismiss Miller's religious discrimination claims on March 2, 2020.  (ECF No. 6.)  Miller responded on March 20, 2020 (ECF Nos. 7, 8.)

## V.   Legal Standard

The Court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails "to state a claim upon which relief can be granted."  *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 786 (3d Cir. 2016).  But detailed pleading is not generally required.  *Id.*  The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claims are and the grounds upon which they rest.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

4

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[3] *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## VI.  Discussion

TTLP moves to dismiss only Miller's religious discrimination claims under Title VII and the PHRA; it does not argue that she has failed to adequately plead her ADEA claims. (ECF No. 6 at 10.) This Court applies the same standards to Title VII and PHRA claims for religious discrimination.[4] *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 318–19 (3d Cir. 2008).

---

[3] Although *Iqbal* described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *see id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

[4] For the sake of simplicity, the Court will only refer to Miller's Title VII claims in its analysis.

**A. The Court Denies TTLP's Motion to Dismiss Miller's Failure to Accommodate Claims**

Title VII requires that employers make reasonable accommodations for their employees' religious beliefs and practices, unless such accommodations would impose an "undue hardship" on the employer. 42 U.S.C. §§ 2000e2(a)(1), 2000e(j). Failure to make a reasonable accommodation is a violation of Title VII. *Id.*

**1. The Parties' Arguments**

TTLP advances two arguments in support of its Motion to Dismiss Miller's failure to accommodate claims: (1) Miller lacks a sincere religious belief for ATTLP to accommodate; and (2) accommodating Miller's professed beliefs constitutes an undue hardship as a matter of law.

TTLP argues that if a plaintiff who claims failure to accommodate acts in a manner inconsistent with their professed religious beliefs, those beliefs cannot actually be sincere, and therefore the plaintiff can have no claim for failure to accommodate a sincere religious belief. (ECF No. 6 at 15–16.) Miller alleges that, at all times relevant, she has maintained the sincere religious belief that she cannot work Sundays. (*Id.* at 16.) However, the Complaint does not allege that she refused to work on November 12, 2017, because of her belief, but rather because she was sick. (*Id.*) This is an admission that Miller would have worked on Sunday had she not been sick, and Miller therefore acted in a manner inconsistent with her professed sincere religious beliefs. (*Id.*) Miller's actions demonstrate, as a matter of law, that she only had a preference for not working on Sunday, not a sincere religious belief, and therefore she fails to state a claim. (*Id.*)

TTLP also argues that the hardship it would have to impose on its other employees in order to accommodate Miller's preference to avoid working Sundays constitutes an undue burden as a matter of law and Title VII therefore did not require it to accommodate Miller. (*Id.*

at 17.) Title VII does not require TTLP to compromise the rights of one employee to accommodate the rights of another, as would have been required to accommodate Miller's preference, and TTLP therefore had no obligation to schedule Miller on days other than Sundays. (*Id.*) As accommodating Miller would be an undue hardship as a matter of law, Miller's claim fails. (*Id.*)

Miller responds that she states a plausible claim of failure to accommodate because the Complaint establishes her sincere religious beliefs and does not establish that accommodating those beliefs would be an undue hardship as a matter of law. (ECF No. 8 at 5.) The Complaint does not demonstrate that she acted in a manner inconsistent with her sincere religious beliefs. (*Id.*) Miller had never worked on a Sunday throughout the course of over eleven years with TTLP, and when TTLP informed her that she would have to begin working Sundays, she reiterated her religious objection to doing so. (*Id.* at 5–6.) Further, November 12, 2017, was the first Sunday she was ever scheduled to work, and even though she called out sick that day, rather than objecting on religious grounds, she was not admitting her willingness to work on Sundays. (*Id.* at 6.) Miller's allegations that she had informed TTLP of her objection, TTLP's failure to accommodate that objection, and TTLP's subsequent termination of her employment all make out a plausible claim of failure to accommodate. (*Id.* at 6–7.)

Miller further argues that although permitting an employee to be off of work every Sunday may constitute an undue hardship, it is not an undue hardship as a matter of law. (*Id.* at 7.) The Third Circuit requires evidence to demonstrate that such a request imposes an undue hardship and the district courts must examine the specific facts of each case to determine whether such a hardship exists. (*Id.* at 8.) For over eleven years, TTLP had accommodated Miller's beliefs, demonstrating that it did not impose an undue hardship. (*Id.* at 8–9.) There are factual questions

remaining in the case that must be resolved to determine whether an undue burden existed, so dismissing Miller's claims at this stage is inappropriate.  (*Id.* at 9–13.)

### 2.  Miller Has Pleaded a Title VII Claim for Failure to Accommodate

To withstand a motion to dismiss, a plaintiff must plead factual allegations that make the following elements plausible:[5] (1) she has a sincere religious belief that conflicts with a job requirement; (2) she told the employer about the conflict; and (3) she was disciplined for failing to comply with that conflicting requirement. *Wilkerson*, 522 F.3d at 319.  TTLP disputes that Miller has pleaded the first and third elements of her prima facie case; TTLP does not dispute that Miller informed it of her beliefs.

### a.  Miller's Complaint Plausibly Pleads Her Sincere Religious Belief

TTLP's argument that Miller does not have a sincere religious belief rests upon its reading of the Complaint and can be summarized by the following syllogism: (1) Miller did not work on November 12, 2017, because she was sick; (2) had she not been sick, Miller would have worked on that day; and (3) because Miller would have worked that day had she not been sick, she does not have a sincere religious belief that Sundays are a day of rest.  (ECF No. 6 at 16.)

This, however, is a misreading of the Complaint.  Although Miller does allege that she called off from work on November 12, 2017, because she was sick, this is not an admission that she would have worked had she not been ill.  (ECF No. 1-1 ¶ 29.)  While it may be a reasonable inference that Miller only had a preference not to work on Sundays and that she was willing to

---

[5] The Court notes that Title VII plaintiffs, at the motion to dismiss stage need not even plead the requisite prima facie case that would be required at the summary judgment stage.  All that is required is to plead facts that, viewed in her favor, state a plausible claim of discrimination. *Connelly*, 809 F.3d at 791.  However, the Court uses those elements as a framework for its analysis.

work that day if she had not been sick, it is not the only reasonable inference that may be drawn from the Complaint.  It is also a reasonable inference that Miller held a sincere religious belief that Sunday was a day of rest.  (*See id.* ¶¶ 19–30.)  The fact that the Complaint states that Miller did not work Sunday because she was sick does not mean that she would have worked had she not been sick—the two are not mutually exclusive.  Finally, the sincerity of a religious belief is a question for the fact finder, not for the Court at this stage in the litigation.  *EEOC v. Aldi, Inc.*, No. 06-cv-1210, 2008 WL 859249, at *6 (W.D. Pa. Mar. 28, 2008).  Accordingly, the Court holds that Miller has plausibly pleaded that she held a sincere religious belief that she could not work Sundays.

### b.   TTLP's Undue Burden Arguments Are Premature

Undue burden or hardship is a defense to a failure to accommodate claim, and an undue burden is one that imposes a more than de minimis burden on the employer; it falls to the employer to show that the burden of accommodation is undue.  *Webb v. City of Philadelphia*, 562 F.3d 256, 259–60 (3d Cir. 2009).  This is a case-specific, factual inquiry, which looks to both the fact of the undue hardship as well as its magnitude.  *Id.* at 260.  Although an accommodation can be an undue hardship as a matter of law, *see Webb*, 562 F.3d at 258, the undue burden analysis only comes into play once the plaintiff has stated a prima facie case, and at the motion to dismiss stage, the plaintiff need only plead a plausible claim, a lower standard that a prima facie case.  *See Connelly*, 809 F.3d at 791; *Wilkerson*, 522 F.3d at 319.  Because she has sustained her pleading burden, she does not need to plead that she asked for an accommodation or that any accommodations were not unduly burdensome.

The cases TTLP cites in support of its argument that accommodating Miller would have, as a matter of law, required an undue hardship, support this Court's determination that TTLP's arguments are untimely.  Without exception, each case TTLP cites involved litigation well past the motion to dismiss stage, and all but one involved either summary judgment decisions or appeals of summary judgment decisions.  (*See* ECF No. 6 at 17–18.)  Accordingly, the Court holds that Miller has stated a plausible Title VII claim of failure to accommodate.

Miller has stated a Title VII claim of religious discrimination under a theory of failure to accommodate and the Court denies TTLP's Motion to Dismiss to the extent it seeks to dismiss Counts I and III of Miller's Complaint.

### B.   The Court Denies TTLP's Motion to Dismiss Miller's Disparate Treatment Claims

Title VII also prohibits employers from treating employees with certain religious beliefs differently than those with differing religious beliefs.  42 U.S.C. § 2000e–2(a)(1).  To withstand a motion to dismiss, a plaintiff must plead facts giving rise to a plausible claim of discrimination, that she: (1) is a member of a protected class; (2) is qualified for the position; (3) suffered an adverse employment action; and (4) under circumstances that give rise to an inference of unlawful discrimination.  *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999).  To properly plead the fourth element, a plaintiff may, but is not required to, show that similarly situated individuals outside her class received more favorable treatment.  *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273 (3d Cir. 2010).

#### 1.   The Parties' Arguments

TTLP argues that Miller's claim fails because she has not identified any similarly situated employees who received more favorable treatment.  (ECF No. 6 at 19.)  TTLP contends that, to

state a claim of disparate treatment under Title VII, a plaintiff must show that he or she was fired under circumstances giving rise to an inference of unlawful discrimination and that Miller's Complaint does not give rise to such an inference. (*Id.*) Miller's claims are premised on the theory that she received different treatment from similarly situated individuals, but she fails to identify any individuals who are similarly situated and received better treatment. (*Id.*) Because Miller has not pleaded any facts that give rise to an inference of discrimination, her disparate treatment claims must fail. (*Id.* at 19–20.)

Miller replies that she has alleged sufficient facts to give TTLP notice of her claims, as well as those she alleges were treated differently than she. (ECF No. 8 at 14.) TTLP possesses the documentation and records that make substantiating Miller's claims possible, and therefore they are able to respond to Miller's claims. (*Id.* at 14–15.) To require Miller to plead specific actions taken by TTLP that favored other employees is unrealistic and not required at this stage in the litigation. (*Id.* at 15.) Courts in this district have permitted Title VII claims to proceed without identification of specific comparators, and Miller need not present more specific allegations than she already has to state a claim. (*Id.* at 15–16.)

### 2. Miller's Allegations Give Rise to an Inference of Discrimination

TTLP does not dispute that Miller is a member of a protected group (a religious person), or that she was qualified and suffered an adverse employment action. (*See* ECF No. 6 at 19.) TTLP argues that Miller's allegations fail at the fourth element: the inference of discrimination. (*Id.*) TTLP contends that when a plaintiff bases her claim on a theory that similarly situated individuals

received favorable treatment from the employer, the plaintiff must identify those individuals and the favorable treatment. (*Id.*)

Miller's pleadings, construed in her favor, raise an inference of unlawful discrimination and disparate treatment. For over eleven years, TTLP accommodated Miller's religious beliefs and did not schedule her to work Sundays. (ECF No. 1-1 ¶ 23.) When TTLP informed Miller that she would have to start working Sundays, she reiterated her religious objections, and TTLP told her she would still have to work Sundays when scheduled. (*Id.* ¶¶ 25–27.) Miller missed the first Sunday she was scheduled to work due to illness, had a doctor's note for that absence, and called off in conformance with TTLP's procedures, but TTLP fired her two days after she missed her first ever Sunday shift. (*Id.* ¶¶ 28–31, 59.) Finally, Miller pleads, upon information and belief, that other similarly situated employees were not terminated after missing one shift. (*Id.* ¶ 60.)

These allegations are sufficient to state a plausible claim of disparate treatment. The fourth element, the inference of discrimination, is, at the motion to dismiss stage, an "easy burden" to carry. *Finn v. Porter's Pharm.*, No. 15-cv-661, 2015 WL 5098657, at *3 (W.D. Pa. Aug. 31, 2015). Miller need not plead specifics of similarly situated individuals receiving favorable treatment so long as she has pleaded facts that are adequate to create an inference that the employment discrimination was based on unlawful criteria. *See Pivorotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355 (3d Cir. 1999). Further, in the related context of age discrimination, a plaintiff need not show, as part of a prima facie case, that her employer replaced her with someone outside of her protected class. *O'Connor v. Consol'd Coin Caterers Corp.*, 517 U.S. 308, 311–12 (1996). At the motion to dismiss stage, Miller need not even establish the requisitie prima facie case that defeating summary judgment would entail—her burden is lower. *Connelly*, 809 F.3d at 791.

Miller's allegations give rise to a plausible inference that she was treated less favorably than others not of her religion, and the Court accordingly denies TTLP's Motion to Dismiss her Title VII disparate treatment claims, Count II and Count IV.

## VII.    Conclusion

For the forgoing reasons, the Court holds that Miller has stated plausible claims for religious discrimination in violation of Title VII under a theory of both failure to accommodate and disparate treatment and accordingly denies TTLP's Motion to Dismiss.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDA MILLER,                              )     Case No. 3:20-cv-31
                                           )
        Plaintiff,                 )     JUDGE KIM R. GIBSON
                                           )
    v.                             )
                                           )
TITHONUS TYRONE, L.P.,                     )
                                           )
        Defendant.                 )

### ORDER

    **AND NOW**, this 29th day of April, 2020, after consideration of Defendant Tithonus Tyrone

L.P.'s Motion to Dismiss Plaintiff Linda Miller's Title VII and PHRA claims (ECF No. 6), and for

the reasons in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that the

Motion is **DENIED**.

                    BY THE COURT:

                    _____

                    KIM R. GIBSON
                    UNITED STATES DISTRICT JUDGE